FILED
Clerk
District Court
FEB 09 2015
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JAE BOONG KIM,<br><br>        Petitioner,<br><br>  v.<br><br>DONALD HALL, United States Marshal for the District of the Northern Mariana Islands,<br><br>        Respondent. | Case No. 1:13-cv-00029<br><br>**MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION FOR RELEASE PENDING APPEAL** |

## I.  INTRODUCTION

Before the Court is Petitioner Jae Boong Kim's motion for release from custody pending appeal ("Motion," ECF No. 31), filed January 21, 2015. Attached to the Motion are counsel's supporting memorandum and declaration, as well as declarations of Petitioner (hereinafter "Kim"), Peggy Villagomez, and Hye Jung Kim. Respondent (hereinafter "the Government") opposes release. ("Opposition," ECF No. 27.) The Motion came on for a hearing on January 23, 2015. While it was under advisement, Kim filed Supplemental Evidence and Authority ("Supp.," ECF No. 36). Having considered the papers and the oral arguments of counsel, the Court now DENIES the Motion, for the reasons set forth below.

## II.  BACKGROUND

Kim has been in federal custody for more than twenty months, since his arrest on May 17, 2013, on a fugitive warrant to face possible extradition to the Republic of Korea ("Korea") in two criminal actions. After the Court granted the Government's requests for extradition and certified

Kim as extradictable (Order, 1:13-mc-00020, Oct. 18, 2013, ECF No. 47; Order, 1:13-mc-00021, Nov. 7, 2013, ECF No. 51), Kim applied for the writ of habeas corpus. (Emergency Petition, Dec. 16, 2013, ECF No. 1; Amended Petition, Dec. 17, 2013, ECF No. 3.) The Court denied the petition. (Order, Apr. 2, 2014, ECF No. 15.) Nine days later, Kim appealed the denial. (Notice of Appeal, Apr. 11, 2014, ECF No. 16.)

In the Ninth Circuit Court of Appeals, Kim applied for a stay of extradition pending appeal. (Appellant's Motion for Stay, 14-15696, May 12, 2014, Dkt. No. 2.) On October 29, 2014, the Ninth Circuit granted the requested stay and also stayed the briefing schedule pending issuance of the mandate in *Patterson v. Wagner*. (Order, Dkt. No. 5.) *Patterson* was argued and submitted on November 21, 2014. (13-56080, Dkt. No. 41.)

On November 17, 2014, Kim moved in the Ninth Circuit for release pending appeal. (Dkt. No. 6.) On January 12, 2015, the Ninth Circuit denied the motion "without prejudice to renewal, if necessary, following presentation of the motion to the district court." (Order, Dkt. No. 17.)

### III.   DISCUSSION

Kim asserts that he is entitled to release because (1) his continued detention violates a federal statute, 18 U.S.C. § 3188, that limits the period during which he may be detained to two months; and (2) special circumstances – including probability of success on the merits of the appeal, undue delay, and the uniqueness of the case – call for his release. The Government replies that (1) the two-month period referred to in section 3188 has not commenced and that, except when those two months have elapsed, courts have no authority to release a person who has been certified as extraditable; and (2) special circumstances do not exist, and Kim is a flight risk.

//

//

A. Applicability of 18 U.S.C. § 3188

Section 3188 of Title 18 of the United States Code reads:

> Whenever any person who is committed for rendition to a foreign government to remain until delivered up in pursuance of a requisition, is not so delivered up and conveyed out of the United States within two calendar months after such commitment, . . . any judge of the United States . . . may order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered.

The purpose of this statute, as explained by Justice Goldberg in an in-chambers opinion, is "to ensure prompt action by the extraditing government as well as by [the U.S.] government so that the accused would not suffer incarceration in this country or uncertainty as to his status for long periods of time through no fault of his own." *Jimenez v. U.S. Dist. Court for S. Dist. of Fla., Miami Div.,* 84 S. Ct. 14, 18 (1963). Where the extraditee "has instituted and pursued review of his extradition order, the two-month period runs from the time his claims are finally adjudicated, not from the time of the original commitment order he has been challenging." *Id.* The rule in *Jimenez* is not binding precedent, but it is soundly reasoned and has been widely followed. *See, e.g., Liberto v. Emery,* 724 F.2d 23, 25 n.2 (2d Cir. 1983) (final adjudication delayed by habeas petitions); *McElvy v. Civiletti,* 523 F. Supp. 42, 46 (S.D. Fla. 1981) ("[W]here the delay is caused by consideration of the petitioner's claims by the courts of this, the asylum, country, he is not entitled to release at the conclusion of the two-calendar-month period from the entry of the certificate of extraditability but two months after the final adjudication of his claims."). The delay in Kim's extradition is not because of inaction by the Korean or U.S. government, but because Kim has continued to fight extradition by seeking the writ of habeas corpus. The statutory two-month period will not begin to run until his appeals are exhausted and there is a final adjudication in favor of extradition.

//

Kim cites *Barrett v. United States,* 590 F.2d 624 (6th Cir. 1978), in support of his position that the two-month period began to run for him when this Court denied his application for the writ of habeas corpus. (Supp., pp. 2–3.) In *Barrett,* the Sixth Circuit held that the two months started when the district court certified the petitioner as extraditable and committed him to jail pending extradition. *Id.* at 626. In this respect, *Barrett* did not follow *Jimenez.* However, it expressly relied on *Jimenez* for the proposition that "delay exclusively due to hearing and processing [petitioner's habeas case] cannot be counted under [§ 3188]'s time limitation." *Id.* All the delay since Kim applied for the habeas writ on December 16, 2013, is due to the processing of that application and the appeal of its denial. Moreover, by that date the two-month period had not expired in either of the extradition cases. Thus, even under the *Barrett* rule, time would be tolled.

The Government would end the discussion here. In the Government's view, unless the section 3188 exception applies, "[o]nce a judge has certified a fugitive's extraditability, the plain language of the extradition statute, 18 U.S.C. § 3184, requires that the fugitive be taken into custody and remain in custody pending the [Secretary of State]'s final extradition decision[.]" (Opposition, p. 6.) The Government concedes that there is no precedential authority squarely in favor of its reading of section 3184, and that courts in this circuit and others have proceeded as if they have inherent authority to grant bail post-certification. (*Id.,* p. 8.) There is no need to decide the question, however, absent a finding of special circumstances and low flight risk. Therefore, the Court will address those issues.

B.     Special Circumstances and Flight Risk

"There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir. 1989). The rationale for this high bar to release – higher than that for criminal defendants – is that "extradition cases involve

an overriding national interest in complying with treaty obligations." *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D. Cal. 1990). "The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment." *Wright v. Henkel,* 190 U.S. 40, 62 (1903). While there is no exhaustive list of special circumstances, examples include "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno,* 878 F.2d at 317. Justification for release must be "pressing as well as plain[.]" *United States v. Williams,* 611 F.2d 914, 915 (1st Cir. 1979) (quoting *In re Klein,* 46 F.2d 85 (S.D.N.Y. 1930)). Low risk of flight is a prerequisite for release, but it is not a special circumstance. *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir. 1984); *Taitz,* 130 F.R.D. at 444 ("special circumstances must exist in addition to absence of risk of flight").

   1. *Flight Risk*

Kim pointed out at the bail hearing that he was not in hiding when he was arrested, his passport is expired, and practically speaking it is very difficult for a person to flee the island of Saipan without proper documentation. He is willing to submit to home detention. His wife, a Chinese national, recently was granted parole in place and may remain lawfully in the United States until December 31, 2016. (Supp., pp. 1–2 and attached exhibits.) Kim asserts that if he is released from custody, he is likewise eligible to receive parole in place.

The Government asserts that Kim is more of a flight risk now, having been certified as extraditable, than he was at the start of extradition proceedings, at which time the Court found him to be a flight risk and denied bail. Kim has significant financial resources. Although his wife and daughter live in Saipan, his wife is not a U.S. citizen and the family does not have much in the

way of assets tying them to the local community. The extradition documents demonstrate that Kim, who is charged with fraud, has the ability to obtain false documentation.

The Court agrees with the Government that Kim has not mitigated the substantial risk of flight he posed early in the extradition proceedings, more than a year and a half ago. Evidence that he has forged official documents in the past (a Korean police clearance), which led to the filing of criminal charges in the CNMI in 2009, was and is of particular concern. The risk that Kim will try to flee is still unacceptably high.

    2.    *Special Circumstances*

Because Kim is a flight risk, it is not necessary to determine whether special circumstances exist. *See Taitz,* 130 F.R.D. at 444. For the benefit of appellate review, however, the Court will continue the analysis.

Kim asserts three reasons his circumstances are special. First, he infers from the Ninth Circuit's stay of his extradition that it has been determined his appeal has a high probability of success on the merits. A "strong showing that [petitioner] is likely to succeed on the merits" is the first of four factors that courts must consider in determining whether to stay an order pending appeal. *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) (likelihood of success on merits, irreparable injury to applicant absent stay, substantial injury to others as result of stay, and public interest). Although in its order (Dkt. No. 5) the Ninth Circuit did not explain why it granted the stay, the court did cite to *Hilton*.

The Government replies that the only clear reason for the stay is to await the decision in another Korean extradition case, *Patterson v. Wagner,* 13-56080. The primary issue in *Patterson* is whether, under Article 6 of the U.S–Korea extradition treaty, extradition must be denied if the applicable statute of limitations has run. The answer to that question may determine the outcome

of the habeas appeal in one of Kim's two extradition cases (1:13-mc-00021). *Patterson* was argued and submitted on November 21, 2014. The briefing schedule in Kim's case is stayed until the mandate issues in *Patterson.* (Dkt. No. 5.)

It seems unwise to infer too much, in either side's favor, from the Ninth Circuit's laconic stay order. How much weight the Ninth Circuit gave to the first *Hilton* factor is unclear. The four factors "need not be given equal weight[,]" and "likelihood of success in the appeal is not a rigid concept." *Standard Havens Products, Inc. v. Gencor Industries, Inc.,* 897 F.2d 511, 512 (Fed. Cir. 1990). If the balance of hardships tips sharply in a petitioner's favor, a stay may issue if the appeal merely raises serious questions going to the merits. *Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011) (balancing approach for preliminary injunctions applies to stays). Kim made no other argument in support of a finding that his probability of success on appeal is high. From having heard the two extradition cases, the Court is intimately familiar with the factual background and legal issues raised in the habeas appeal and does not find the prospects of success on the merits to be great.

Second, Kim maintains that the legal proceedings in this matter have been extraordinarily protracted, and that the delay cannot be attributed to him. (Memorandum, pp. 5–6.) Most of the delay he places at the feet of the judiciary. He points out that the Court took two months in one extradition case, and three months in the other, to issue its decisions. He notes that more than three months passed from the date he applied for the habeas writ until the Court issued its order denying the application; and more than five months from the time he moved for a stay of extradition pending appeal until the Ninth Circuit issued a stay on October 29, 2014.

The Government asserts that the delays have not been unusual and, in any event, were not the Government's fault. (Opposition, p. 12.) It points out that some of the delay can be ascribed to

Kim's own requests for continuances in the extradition hearings and motions to amend his habeas petition; and that any additional delay pending the mandate in *Patterson* is unlikely to be long, given that the matter was already submitted two months ago.

It is unnecessary for any of the parties, or for this Court, to engage in finger-pointing about who is responsible for the length of the extradition and habeas proceedings. Given the number of issues raised and the volume of evidence presented in the extradition cases, the time it took to resolve them is expectable. In any event, the relevant inquiry under *Salerno* is whether the *appeal process* is unusually delayed. It is not. Notice of appeal was filed about nine months ago. The Ninth Circuit's delay in ruling on Kim's stay motion has no effect on how long the appeal on the merits will take. Stay of the briefing, in contrast, does create an unusual delay; but as the Government observed, it probably will not be a protracted one. The delay may even, in the long haul, save time by saving the parties from having to brief an issue that the circuit is about to decide.[1] On the other hand, after *Patterson* is decided, issuance of the mandate could be delayed if a party petitions for rehearing or moves to stay the mandate pending petition to the Supreme Court for certiorari. *See* Fed. R. App. Proc. 41(d). The most that can be said is that so far, the appeals process has not taken an inordinate amount of time, and the delay pending the *Patterson* mandate cannot be given much weight.

Third, Kim asserts that his case is unique. He has had to fight not just one complaint for extradition to Korea, but two. (Memorandum, p. 7.) He has been up against, in his view, a series of erroneous rulings and procedural irregularities by the extradition and habeas courts. (*Id.,* pp. 7–

---

[1] On December 5, 2014, the Government moved to reset the briefing schedule, asserting that the *Patterson* decision will have no practical effect on the habeas appeal, in part because Kim has waived a statute-of-limitations defense in 1:13-mc-00020. (14-15696, Dkt. No. 9-1, p. 3.) Kim opposed the motion, characterizing it as a maneuver to prevent his release by artificially speeding up the appeal process. (14-15696, Dkt. No. 12, p. 3.) Kim observed that one purpose of the briefing stay is "to promote judicial economy[.]" (*Id.*)

8.) In support of that contention, he has submitted declarations of two fact witnesses, Peggy Villagomez (ECF No. 31-4) and Hye Jung Kim (ECF No. 31-5), whose testimony was (in Kim's view) improperly excluded from or misrepresented at the extradition hearing. (*Id.,* p. 8.)

The Government replies that these are not circumstances that any court has found bear on the question of release pending appeal. (Opposition, p. 13.) The Government's general view seems relevant here: that the motion for release is a thinly veiled attempt "to have the habeas court not only reconsider its habeas decision but actually hear the merits of the extradition cases." (*Id.,* p. 1.) The Government objects to the Villagomez and Hye Jung Kim declarations as attempts to backdoor new information that "would not have been admissible under the evidentiary limitation in extradition hearings." (*Id.,* p. 5.)

Kim has not demonstrated that having to defend two extradition cases simultaneously is unique; nor has he explained how this circumstance, even if unique, has any bearing on whether he should be released pending appeal. Correction of substantive and procedural errors is the routine business of the appellate courts. The argument from error seems to fit better under the heading of likelihood of success on the merits, but it does not change the Court's view that the probability of a successful merits appeal is not high. The court agrees with the Government that the two witness declarations are not relevant to the bail determination, and disregards them. Likewise Kim's own declaration (ECF No. 31-3), which details the many inequities he believes the courts and the U.S. and Korean governments have visited on him.

The Court finds that Kim has not made a strong showing of success on the merits or demonstrated that his case is unique in ways that overcome the presumption against release of an extraditee pending appeal. Although the appeals process is somewhat delayed by the stay of the

briefing schedule, at this point the delay is not so prolonged as to be unusual. Special circumstances calling for release do not presently exist.

### IV.     CONCLUSION

For the foregoing reasons, Petitioner's motion for release pending appeal is DENIED.

SO ORDERED this 9th day of February, 2015.

                                            RAMONA V. MANGLONA
                                            Chief Judge